IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CECILIA SPOWAL, et al,                          )
                                                )
            Plaintiffs,                         )
    v.                                          )       C.A. 10-187 Erie
                                                )
ITW FOOD EQUIPMENT GROUP LLC,                   )
                                                )
            Defendant.                          )

## OPINION

Presently pending before the court is a Motion for Summary Judgment filed on behalf of

the Defendant, ITW Food Equipment Group LLC ("ITW FEG"), against the Plaintiff, Cecilia

Spowal, who injured her hand while working with a commercial food mixer manufactured by

ITW FEG.  On August 4, 2010, Ms. Spowal filed a Complaint alleging strict liability under the

Restatement (Second) of Torts (Count I), negligence (Count II), and breach of the implied

warranties of merchantability and/or fitness for a particular use (Count III).  [ECF No. 1]  Her

husband, Joseph Spowal, asserts a loss of consortium claim (Count IV).  Id. at ¶¶24-25.  We

have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

For the reasons stated herein, the Motion will be granted.


## I.  Standard of Review

In adjudicating a Motion for Summary Judgment, we apply the well-established legal

standard presently set forth in Fed. R. Civ. P. 56(a), pursuant to which summary judgment shall

be granted when no genuine dispute exists as to any material fact and the moving party is entitled

to judgment as a matter of law. "A disputed fact is 'material' if it would affect the outcome of

the suit as determined by the substantive law." Bouriez v. Carnegie Mellon Univ., 585 F.3d 765,

771 (3d Cir. 2009) (internal quotation and citation omitted). A factual dispute is "genuine," and

thus warrants a trial, "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

"In determining if there is a genuine issue of material fact, '[i]nferences . . . drawn from

the underlying facts . . . must be viewed in the light most favorable to the party opposing the

motion. The non-movant's allegations must be taken as true and, when these assertions conflict

with those of the movant, the former must receive the benefit of the doubt.'" Valhal Corp. v.

Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995) (quoting Goodman v. Mead Johnson &

Co., 534 F.2d 566, 573 (3d Cir. 1976)). However, summary judgment must be entered against

any party unable to present sufficient evidence in support of an essential element of a claim

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).

## II.  Background

Unless otherwise stated, the following facts are not in dispute.

On August 9, 2008, the Plaintiff, Cecilia Spowal, while working in the bakery at BiLo

supermarket in St. Marys, Pennsylvania, injured her hand while operating a large commercial

food mixer. The mixer was a Hobart model V-1401, manufactured by the Defendant, ITW FEG,

and sold to BiLo Supermarket in 1989. It stands nearly six feet tall and more than two feet wide and encompasses a 140 quart bowl. Its basic parts include a stand, a mixing paddle, and a bowl. In order for the paddle to rotate, the mixer must be turned on. When in use, the mixer's bowl is raised so that the paddle is down inside the bowl while operating. Therefore, the bowl surrounds the paddle and acts as a guard to prevent an operator from inadvertently contacting the paddle. Once turned off, there is a short wind-down time before the paddle comes to a complete stop. There were no warnings or instructions on or around the mixer on the day of the accident.

On the day of her injury, Ms. Spowal had been at work in the bakery department since 5:00 a.m. At about 1:15 p.m., Ms. Spowal was making peanut butter filling for doughnuts and added peanut butter to the mixture already in the bowl and turned on the mixer. After five or six minutes, she turned the mixer off and as the paddle was slowing down but still rotating, she stuck her hand into the mixer and used the top of the paddle to wipe peanut butter off her bare hand. She testified that there were numerous other times when she had wiped something off her hand onto the paddle. Ms. Spowal's hand slipped off the paddle and got stuck between the paddle and the inside of the bowl, causing her to sustain a serious permanent injury to her right hand.

Ms. Spowal testified that she had used the mixer one or two times a day for more than two years prior to the accident and that it was obvious that users should not put their hands in the mixer while the paddle was rotating. However, she testified that she was unaware that the paddles did not stop rotating when the mixer was turned off. BiLo had not given her an instruction manual. Had she read the instruction manual, she would have seen the following warning:

> WARNING: MOVING BEATER IN BOWL. KEEP HANDS,
> CLOTHING, AND UTENSILS OUT WHILE IN OPERATION.

Plaintiffs' Concise Statement of Material Facts [ECF No. 58-2, p. 3, ¶ 2]

The Defendants have submitted an affidavit of William C. Schlieper [ECF No. 54-2], the Director of Product Design Policy for ITW FEG. Mr. Schlieper testified that "[c]ommercial mixers are intended to be used by workers who adhere to safe and sanitary work practices as set forth by the Federal Food & Drug Administration, whose standards prohibit bare hand contact with ready-to-eat foods." Id. at ¶6. Mr. Schlieper testified that "[o]nce the mixer is turned off, there is a short wind-down time before the paddle comes to a complete stop. The wind-down time varies depending on how much and what type of food product is in the mixer bowl." Id. at ¶4. He also testified that the mixer's design "met all the safety standards set forth by Underwriters Laboratories, Inc. ("UL") and NSF International," the independent entities in the commercial food equipment industry charged with the duty to "evaluate, test, and certify product designs for safety and sanitation." Id. at ¶8.

## III. Discussion

### A. Applicable Law

At the outset, we note a recent decision by the United States Court of Appeals for the Third Circuit, Covell v. Bell Sports, Inc., 651 F.3d 357 (3d Cir. 2011), in which the court reiterated its holding in Berrier v. Simplicity Manufacturing, Inc., 563 F.3d 38 (3d Cir. 2009), that federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts.[1] "'[I]n the absence of a controlling decision

---

[1] Section 2 of the Restatement (Third) of Torts provides, in relevant part:
§ 2. Categories Of Product Defect

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must

predict how Pennsylvania's highest court would decide this case.'" Covell, 651 F.3d at 362

(quoting Berrier, 563 F.3d at 45-46). In making that determination, the court must consider

"'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other

reliable data tending convincingly to show how the highest court in the state would decide the

issue at hand.'" Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 46 (3d Cir. 2009) (quoting

McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980)). "The Pennsylvania

Supreme Court has not issued a definitive opinion on whether the Restatement (Third) of Torts

or the Restatement[s][sic] (Second) of Torts and applies to strict liability and product defect

cases. Accordingly, we will follow the precedent set out in Covell and Berrier." Sikkelee v.

Precision Airmotive Corp., 2012 W.C. 5077571 (C.A.3 (Pa.)).

Essentially, the Court of Appeals in Covell predicted that the Pennsylvania Supreme

Court will adopt the Restatement (Third) of Torts, which abandons the negligence versus strict

liability distinction. Broadly speaking, its predecessor, the Restatement (Second) of Torts

applies a strict liability standard, making sellers liable "for harm caused to consumers by

unreasonably dangerous products, even if the seller exercised reasonable care," so long as the

seller is in the business of selling the product and the product reached the ultimate consumer

without substantial change. Restatement (Second) of Torts § 402A. "Section 402A thus creates

---

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2 (1998).

a strict liability regime by insulating products liability cases from negligence concepts." Covell, 651 F.3d at 361.

In contrast, the Restatement (Third) of Torts defines a product design as defective when the foreseeable risks of harm posed by the product could have been avoided if the manufacturer had used a reasonable alternative design. §2(b).  In order to make product design defect determinations under the Restatement (Third), the trier of fact must consider traditional negligence concepts, such as foreseeable risk and reasonable care.  Therefore, under the Restatement (Third) of Torts, the inquiry focuses on the conduct of the manufacturer, rather than applying a strict liability standard.

As will be explained infra, pertinent to the outcome of the pending Motion is our reliance on the affidavit of William C. Schleiper.  We note that the Covell court affirmed the district court's decision to admit evidence of the seller's compliance with product regulations as evidence of whether or not a product is defective, citing  Restatement (Third) of Torts § 2, Comments thereto,  and Fed. R. Evid. 401 and 402.  See Restatement (Third) of Torts § 4 (allowing for consideration of a product's compliance with an applicable safety statute in determining whether a product is defective with respect to the risks sought to be reduced by the statute).  Although the Covell court found that "it is highly unlikely that the Supreme Court of Pennsylvania would apply sections 1 and 2 of the Restatement (Third) of Torts (allowing negligence concepts), but not section 4 (providing for relevant industry regulation)," it declined to determine whether the Pennsylvania Supreme Court would adopt section 4.   Instead, the Court in Covell simply decided that evidence of compliance with the Consumer Product Safety Commission standards was relevant to section 2 of the Restatement (Third) of Torts as applied in Berrier and, therefore, admissible.  See Covell, 651 F.3d at 366.

6

With respect to the failure to warn cause of action, pursuant to the Restatement (Third) of Torts, a product is "defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller . . . and the omission of the instructions or warnings renders the product not reasonably safe.  Restatement (Third) of Torts: Products Liability § 2(c).  We note that the Third Circuit in Covell did not predict that the Pennsylvania Supreme Court would adopt Restatement (Third) of Torts § 10 (Liability of Commercial Product Seller or Distributor for Harm Caused by Post-Sale Failure to Warn).

The Plaintiffs argue in their Memorandum in Opposition to Motion for Summary Judgment [ECF No. 57] that the Restatement (Second) of Torts is the applicable law in this case.  The Plaintiffs cited Justice Baer's concurring opinion in Beard v. Johnson and Johnson, Inc., 41 S.3d 823 (2012), distancing himself from particular language in the majority opinion "to the extent it may be read to express approval of the Restatement (Third) of Torts: Products Liability."  Justice Baer stated that the Court of Appeals for the Third Circuit "misconstrued" language in Berrier as an inclination of the Pennsylvania Supreme Court to adopt the Restatement (Third) of Torts.  However, we are not bound by this language.  Since Berrier, there has been no change in the Pennsylvania law and our earlier ruling remains the law of the case; without a controlling decision by the Pennsylvania Supreme Court on the issue, we are bound by the Third Circuit's decision in Covell, which deemed evaluation under the Restatement (Third) of Torts is proper in product liability cases in Pennsylvania.  See Sansom v. Crown Equip. Corp., 2012 WL 3027989, *6 (W.D. Pa. July 24, 2012) ("[N]otably absent in Beard is any determination, holding or even persuasive *dicta* clearly and directly contrary to Covell regarding the applicable law governing Pennsylvania products liability cases . . . [G]iven that the

7

Pennsylvania Supreme Court in Beard did not affirmatively disavow the premise of the Covell

decision, along with the principle that the Third Circuit's predictions regarding Pennsylvania

state law are binding on this Court absent a decision of the Pennsylvania Supreme Court

expressly to the contrary, this Court must and will apply the Third Circuit's Covell prediction

and rely upon Sections 1 and 2 of the Restatement (Third) of Torts."); but see Sikkelee v.

Precision Airmotive, Corp., 2012 WL 2552243, *9 (M.D. Pa. July 3, 2012) ("Beard makes it

abundantly clear that there remains an ideological split within the Pennsylvania Supreme Court

relative to adoption of the Restatement Third . . . [T]he Pennsylvania Supreme Court, by again

declining to take advantage of the opportunity to adopt the Restatement Third, has indicated that

the Restatement Second remains the law in Pennsylvania."), Carpenter v. Shu-Bee's, Inc., 2012

WL 2740896, *2 (E.D. Pa. July 9, 2012) (same).

## B. Abandoned claims

On July 11, 2011, ITW FEG moved for summary judgment on all counts (strict liability

(Count I), negligence (Count II), breach of the implied warranties of merchantability and/or

fitness for a particular use (Count III), and loss of consortium (Count IV)).  Also on July 11,

2011, ITW FEG filed a Motion in Limine to Exclude the Testimony and Opinions of Kai

Baumann [ECF No. 34], the Plaintiffs' expert, who had opined that the mixer was defectively

designed when it was manufactured in 1989 because it was not equipped with an interlocked

bowl guard to prevent users from touching the rotating paddle while the mixer was winding

down.  He also opined that there should have been an unidentified warning on the mixer to alert

operators not to put their hands in the mixer's bowl while the paddle was rotating.  ITW FEG

argued in its Motion in Limine that the expert testimony should be excluded on the grounds of

unreliable methodology and lack of requisite expertise.

On August 9, 2011, the Plaintiffs filed a response to the Motion for Summary Judgment [ECF No. 41] and on August 23, 2011, the Defendant filed its reply. [ECF No. 45]

On August 25, 2011, the Plaintiffs filed a response to the Defendant's Motion in Limine stating that they did not oppose the Motion in Limine to exclude the Plaintiffs' expert report. [ECF No. 46]  It was not until after the Motion for Summary Judgment had been fully briefed by both sides that the Plaintiffs made it known that they did not oppose the exclusion of the testimony and opinion of the Plaintiffs' expert from the evidence.

On April 4, 2012, this Court filed a Memorandum Order instructing the parties that sections 1 and 2 of the Restatement (Third) of Torts are the applicable law for products liability cases in Pennsylvania, not the Restatement (Second) of Torts.  [ECF No. 52]  The Court allowed both parties to re-brief the issues in this case based on the Restatement (Third) of Torts. Id. Subsequently, in their Memorandum in Opposition to Motion for Summary Judgment [ECF No. 57], the Plaintiffs do not appear to pursue their theories of liability based upon defective manufacture, defective design, or breach of implied warranties of merchantability and/or fitness for a particular use. (Count I - strict liability and Count III - breach of the implied warranties of merchantability and/or fitness for a particular use).  The Plaintiffs do not allege that the product departed from its intended design, negating a theory of liability based upon defective manufacture under the Restatement (Third) of Torts.  §2(a).  Nor do they set forth any arguments that the Defendant breached its warranty of merchantability and/or fitness for a particular use. Finally, the Plaintiffs appear to abandon their theory of liability based on defective design because they have failed to present sufficient evidence that a reasonable alternative design was available at the time of manufacture and sale.

The Plaintiffs also did not oppose the exclusion of the only expert testimony presented by them that supported this theory of liability.  Further, the Plaintiffs have failed to present sufficient evidence that the omission of an alternative design rendered the mixer not reasonably safe.  Therefore, we consider the Plaintiffs' claims based on theories of liability based on defective manufacture, defective design, and breach of warranty of merchantability and/or fitness for a particular purpose abandoned for the purposes of this Motion.  The Plaintiffs do, however, pursue a theory of liability based on the Defendant's alleged failure to warn of the dangers presented by the paddle continuing to rotate after the mixer is turned off.

The Plaintiffs' response focuses on their theory that the Defendant failed to warn Ms. Spowal of the danger that the paddles continue to rotate after turning the mixer off such that it should be held liable under theories of negligence and strict liability.[2]  The Plaintiffs contend that the mixer was defective because it lacked the appropriate warning label, which should have warned users of the danger of paddles continuing to rotate after the mixer is turned off, a danger which the Plaintiffs argue ITW FEG knew of at the time of the sale of the mixer, and that such a failure to warn constitutes a defect in the product under the Restatement (Third) of Torts. Memorandum in Opposition to Motion for Summary Judgment, p. 9.  [ECF No. 57]  Further, the Plaintiffs contend that, even if the Defendant is not liable under a strict liability theory, it is liable under a negligence theory because it was under a duty to warn users of the product's dangers when the chattel is known to be dangerous for its intended use under Restatement (Second) of Torts §388.  Id. at p. 6.

For the purpose of resolving the pending Motion, we assume that the Defendant's Motion is unopposed with respect to the defective manufacture, defective design, and breach of implied

---

[2] As was explained in Section III.A. above, this Court has determined that the Restatement (Third) of Torts is the proper law of application in this case and , therefore, Plaintiff's claim of strict liability is not appropriate.

warranties of merchantability and/or fitness for a particular use claims, which were originally pleaded in the complaint at ¶¶22-23. We will grant the Defendant's Motion for Summary Judgment, in part, as to the claims of strict liability and breach of the implied warranties of merchantability and/or fitness for a particular use. Accordingly, the issues before the Court have been narrowed and the Count II negligence claim and Count IV loss of consortium claim are the only two remaining claims before the Court.

### C. Negligence - Failure to Warn

Plaintiffs contend that the Defendant is strictly liable for its alleged failure to warn of the danger posed by the product, however, the Restatement (Third) of Torts abandons strict liability and incorporates into the cause of action elements of negligence. Under sections 1 and 2 of the Restatement (Third) of Torts, the concepts of strict liability and negligence are forged into one cause of action. Therefore, to succeed on their claim based on the Defendant's alleged failure to warn, the Plaintiff must show negligence on the part of the Defendant by demonstrating that the danger that the paddles would not come to a complete stop after turning the mixer off posed a foreseeable risk of harm that could have been reduced or avoided by the incorporation of a warning or label by the Defendant warning users of the danger, that the product was used for its intended use, and that the danger was not open and obvious. "A prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." Shannon v. Hobart, 2011 WL 442119, p. 7 (E.D. Pa. 2011) (citing Krentz v. Consol. Rail Corp., 589 Pa. 576, 910 A.2d 20, 27-28 (Pa. 2006)). Furthermore, "in Pennsylvania, foreseeability is a legal requirement before recovery can be had." Id. (citing Griggs v. BIC Corp., 981 F.2d 1429, 1435 (3d. Cir. 1992)). As discussed

below, Plaintiffs' fail to prove that Defendant had a duty to warn of the danger of the mixer

because of the "open and obvious" nature of the danger of a moving agitator and, thus, all other

elements of the claim are moot.

### 1. Duty to Warn versus Open and Obvious Risk

The Defendant argues that there is no duty to warn of an obvious risk or risk about which

a plaintiff knew. [ECF No. 59, Reply Memorandum in Support of Motion for Summary

Judgment, p. 3] ITW FEG contends that the danger of placing one's hand in a commercial mixer

while the paddle is rotating is open and obvious, regardless of whether the paddle was rotating

because the mixer was turned on or winding down. Id. Further, ITW FEG contends that Ms.

Spowal knew not to put her hand in the mixer while the paddle was still rotating and that she

could be injured if she did so. Id. at pp. 3-4. But for her wiping her hand on the paddle, an

action the record establishes was forbidden and outside the intended use of the product, Ms.

Spowal's injury would not have occurred.

Under Pennsylvania law, if a product is defective due to lack of adequate warnings about

the product's safe use, and the defect is a proximate cause of the plaintiff's injury, the

manufacturer is strictly liable. Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 119 (3d Cir.

1992). "If, however, the danger is open and obvious, there is no duty to warn." Id. (citing Sherk

v. Daisy-Heddon, 427 A.2d 657, 660 (Pa. Super. 1981)). Unlike assumption of the risk, which

requires actual subjective knowledge, the inquiry into whether a danger is open and obvious is an

objective one, "not dependent upon the actual knowledge of the user or his actual awareness of

the danger." Id. The inquiry focuses on "whether knowledge of the danger would be possessed

by 'the ordinary consumer who purchases [or uses the product], with the ordinary knowledge

common to the community as to its characteristics.'" Id. (quoting Sherk, 427 A.2d at 661).

Therefore, Ms. Spowal's actual knowledge of the danger of putting her hand in the mixer is irrelevant to the issue of whether the danger was "open and obvious." "It is well-established under Pennsylvania law that a manufacturer has no duty to warn of a danger where such danger is open and obvious, there is no duty to warn." Shannon v. Hobart, 2011 WL 442119, p.6. Regardless of whether Ms. Spowal had actual, subjective knowledge of the danger, the inquiry into whether the danger was "open and obvious" is an objective one. We find that knowledge of the danger of placing any part of one's body into a mixer while the paddle is still rotating would be possessed by the ordinary individual who uses the product with the ordinary knowledge common to the community as to the product's characteristics. Further, Ms. Spowal stated that no one ever had to tell her not to put her hand in the mixer while the agitator was rotating because it was obvious that she shouldn't. Deposition of Cecilia Spowal, p. 1. [ECF No. 57-13] Similar to this case, the Plaintiff in the Shannon case could not establish that a mixer was defective for failure to warn that the mixer was dangerous because the plaintiff was aware of the danger. Id. at 6. The Shannon Court found that the Plaintiff's negligence claim failed as a matter of law, and granted summary judgment. Id. at 8. See also Blake v. Greyhound Lines, Inc., 448 F.Supp. 2d 635, 641 (the court granting summary judgment denying the negligence claim stated, "Whether a danger is open and obvious is an objective inquiry that does not require examination of an individual user's actual knowledge or awareness of the danger."); and Rice v. Kring, 310 Pa. 550, 165 A. 833, 835 (1933) (no duty to warn of open and obvious danger in a negligence action).

While the Defendant argues that it is "open and obvious" that a person should not put their hand in a mixer with a moving agitator, the Court also considers the issue of whether it was "open and obvious" that the paddles on the mixer would not come to a complete stop

immediately after the mixer was turned off.  The Plaintiffs argue that Ms. Spowal was "unaware that the agitator did not come to a complete stop as soon as the mixer was turned off, was unaware that it took some time [for] the agitator to come to a complete stop, and was unaware of the dangers presented by the paddles which continued to run after the mixer was turned off. [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57, p. 9.]

As previously stated, despite Ms. Spowal's actual, subjective knowledge that the paddles did not come to a complete stop immediately after turning the mixer off, we find that knowledge that the paddles would not come to a complete stop immediately after turning the mixer off is knowledge that would be possessed by the ordinary consumer who purchases or uses the product with the ordinary knowledge common to the community as to the product's characteristics.  See Fleck, 981 F.2d at 119.  The paddles on the commercial mixer possess similar characteristics as the paddles on a household kitchen mixer, the blades of a household fan, and other household products that contain rotating parts.  It is common knowledge that when a household fan is turned off, the paddles of the fan do not immediately come to a complete stop, but require some wind-down time to come to a complete stop after being turned off.  The Plaintiffs have presented no evidence to suggest that this knowledge is not common to an ordinary consumer who uses the product with ordinary knowledge common to the community as to the product's characteristics. We find that no reasonable jury could find for the Plaintiff on this issue.  Because this danger is open and obvious, the Defendant was under no duty to warn of the danger that the paddles do not come to a complete stop immediately after turning off the mixer and require some wind-down time before coming to a complete stop.  With no duty to warn there can be no breach of that duty and the elements of the claim of negligence are not satisfied.

## 2. Causation of the Injury

The Defendant argues that the Plaintiffs have presented no evidence that a warning would have prevented the accident, as there is no evidence that Ms. Spowal would have acted differently if a warning had been provided. [Reply Memorandum in Support of Motion for Summary Judgment, ECF No. 45, p. 4] When asked if she was aware that it took some time for the paddles to come to a complete stop after hitting the stop button on the mixer, Ms. Spowal testified, "Not really. I guess I didn't pay much attention to that after I turned it off." [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57-13, p. 3] The Plaintiffs contend that Pennsylvania law "necessitates the assumption that the Plaintiff would have heeded a proper warning." Id. at p. 10 (citing Davis v. Berwind Corp., 690 A.2d 186 (Pa. 1997)). The Plaintiffs further contend that, even if Ms. Spowal had read the warning in the instruction manual, it clearly does not state that when the mixer is turned off and not in "operation," the paddles will continue to run as they wind down. The Plaintiffs contend that this is a question of fact for the jury to determine whether the Defendant's actions in placing the arguably insufficient warning in the instruction manual and in failing to ensure that users of the product are apprised of the danger, citing Restatement (Second) of Torts § 388, was the proximate cause of the Plaintiff's injury. Ms. Spowal testified that she knew that she could be injured if she put her hand inside the mixer while the agitator was still rotating. [Deposition of Cecilia Spowal, ECF No. 57-13, p. 3] She also testified that she had placed her hand inside the mixer on numerous occasions prior to the date of her accident. Id. Ms. Spowal testified, "Every time I used it I probably did the same thing that I did the day I got hurt and didn't pay attention to whether it was at a complete stop or just slowing down." Id.

The Plaintiffs contend that the Defendant is also liable for failure to warn "post-sale' of the alleged defect in the mixer. [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57, pp. 7-8] The Plaintiffs contend that, even if a letter had been sent to Ms. Spowal's employer informing it of the danger presented by the paddles continuing to run after the mixer is turned off, it would not be sufficient to notify the end user, Ms. Spowal. Id. at p. 8.  Further, the Plaintiffs contend that the label provided by the Defendant to Ms. Spowal's employer, which was attached to the mixer after her employer purchased the bowl guard kit, is evidence that the label is necessary to advise end-users of the danger. Id.

However, the label reads, "Keep hands out. Do not use without interlocked bowl guard." [ECF No. 57-10] The label does not state that the paddles continue to rotate after the mixer is turned off, the alleged danger that the Plaintiffs' claim caused Ms. Spowal's injury.  The warning states that the mixer should not be used without the interlocked bowl guard, but the Plaintiffs' presentation of Mr. Kelly's testimony, which we do not credit, states that the bowl guard is intended to prevent accidental or inadvertent contact with the mixer. [ECF No. 57-7]  The Plaintiffs have presented no evidence to support their assertion that the label supplied by the Defendant to Ms. Spowal's employer when it purchased the add-on bowl guard kit in any way warns of the danger that the Plaintiffs contend caused Ms. Spowal's injury, the danger that the paddles continue to rotate and require some wind-down time to come to a complete stop after the mixer is turned off. The causation prong of the negligence claim, therefore, fails.

### 3. Intended use and Foreseeability

Finally, the Defendant argues that the Plaintiffs' failure to warn claim, whether premised on strict liability or negligence, is barred as a matter of law because the product was not used for its intended purpose at the time of the accident. [Defendant's Memorandum in Support of

Summary Judgment, ECF No. 32, p. 3-4] (citing Pa. Dept. of Gen. Servs. v. U.S. Mineral Prods. Co., 898 A.2d 590, 600 (Pa. 2006)). ITW FEG argues that Ms. Spowal has presented no evidence that her use of the rotating mixer paddle to wipe her hand was an intended use of the product, and in fact, such a use was prohibited by the Federal Food & Drug Administration. [Reply Memorandum in Support of Motion for Summary Judgment, ECF No. 45, p. 3] The Plaintiffs argue that Ms. Spowal was using the mixer for its intended use of mixing food products. [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 41, p. 11] However, the Plaintiffs misunderstand the "use" of the product to which the law refers. It is not the use of the mixer to mix food products, but the use of the paddle to wipe her hand that caused Ms. Spowal's injury. Therefore, the issue before the Court is whether her use of the paddle to wipe her hand was an intended use of the product.

There is no doubt that under Pennsylvania law, which the parties agree applies here, "a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user." Pa. Dept. of Gen. Servs., 898 A.2d at 600. "An unintended use, even if foreseeable, will not render a product defective." Id. In limited circumstances, evidence of a plaintiff's conduct is admissible in a strict liability action to disprove a claim that a product's defect caused an injury. Such conduct is admissible only to prove: (1) assumption of the risk; (2) misuse of the product; or (3) highly reckless or extraordinarily unforeseeable conduct. See Dillinger v. Caterpillar, Inc., 959 F.2d 430, 445-446 (3d Cir. 1992); Nesitt v. Sears, Roebuck & Co., 415 F.Supp.2d 530, 544 (E.D. Pa.2005); Kramer v. Raymond Corp., 840 F.Supp. 333, 334 (E.D. Pa. 1993) (citing Dillinger, 959 F.2d at 445-46). Otherwise, a plaintiff's contributory negligence is inadmissible "either to reduce the plaintiff's recovery or as a defense

to liability." See Kramer, 840 F.Supp. at 334 (citing McCown v. International Harvester Co., 342 A.2d 381 (Pa. 1975)).

"Under Pennsylvania law, evidence of misuse is generally admissible to defeat causation in a strict liability design defect case." Moyer v. United Dominion Industries, Inc., 473 F.3d 532, 542 (3d Cir. 2007) (citing Dillinger, 959 F.2d at 445; Clark v. Bil-Jax, Inc., 763 A.2d 920, 923 (Pa. Super. 2000); Charlton v. Toyota Indus. Equip., 714 A.2d 1043, 1047 (Pa. Super. 1998)). "Some Pennsylvania cases suggest, however, that such evidence is admissible, however, only if the misuse was the sole cause of the injury." Id. at 542-543 (citing Madonna v. Harley Davidson, Inc., 708 A.2d 507, 509 (Pa. Super. 1998) ("As [several Pennsylvania] cases demonstrate, a user's negligence is not relevant if the product defect contributed in any way to the harm. However, where the defense offers evidence to establish that the accident was *solely* the result of the user's conduct, and not related in any way with a product defect, it is relevant and admissible for the purpose of proving causation.")).

We find that Ms. Spowal has presented no evidence that the act of placing her hand into the mixer to wipe her hand on the paddle was an intended use of the product. Affidavit of William C. Schlieper, ¶6. [ECF No. 54-2]  See Pa. Dept. of Gen. Servs., 898 A.2d at 601 ("[A] manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer."); U.S. Airways, Inc. v. Elliott Equip. Co., Inc., 2008 WL 4461847, at *9 (E.D. Pa. Sept. 29, 2008) ("No strict liability exists for non-intended uses even if foreseeable."); and Clevenger v. CNH America, LLC, 2008 WL 2383076, at *3 (M.D. Pa. June 9, 2008) (a product's intended use is not any foreseeable use, but rather manufacturer's actual, intended use of product). In fact, Ms.

Spowal's use of the paddle to wipe her hand was forbidden by the Federal Food & Drug Administration, "whose standards prohibit bare hand contact with ready-to-eat foods." Affidavit of William C. Schlieper, ¶6. [ECF No. 54-2]

The Plaintiffs argue that the Defendant was aware that users intentionally placed their hands in the bowls. [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57, p. 10] However, as stated previously, this is a non-intended use of the product and a manufacturer is not liable for non-intended uses, even where the non-intended use is foreseeable by the manufacturer. Therefore, even the Defendant's actual knowledge of the product's misuse does not make the Defendant liable for such misuse. Further, evidence of Ms. Spowal's misuse of the product is admissible because her misuse of the product was the sole cause of the injury and is relevant to the issue of causation.

The Plaintiffs also proffer evidence of testimony made by John P. Kelly, Product Design Policy Manager for ITW Food Equipment Group LLC, who testified on the Defendant's behalf in another case, Shannon v. Hobart, 2011 WL 442119 (E.D. Pa. 2011). [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57, p. 8] The Plaintiffs submitted excerpts from Mr. Kelly's deposition [ECF No. 57-7, 57-9] and affidavit [ECF No. 57-8] from that case in support of their argument that the mixer was unsafe without a warning indicating that the paddles would continue to rotate after turning the mixer off and that the Defendant was aware that users were using the product in its "unguarded and uncorrected state." [Memorandum in Opposition to Motion for Summary Judgment, ECF No. 57, pp. 8-9]

We are unconvinced by the Plaintiffs arguments. First, in Shannon, Mr. Kelly testified about the Hobart Model M-802 mixer, which was manufactured in 1982. [ECF No. 57-7, 57-8] The mixer that Ms. Spowal was using when she injured her hand was a Hobart Model V-1401,

which was manufactured in 1989. We cannot credit expert testimony regarding a product in a products liability action where such testimony was given regarding an entirely different model, manufactured seven years earlier than the mixer in question.

Further, even if we were to credit Mr. Kelly's testimony to the extent that it applies to the mixer in question, he testified in his deposition in <u>Shannon</u> that, "The guards are put on products to prevent accidental or inadvertent contact with a hazard." [ECF No. 57-7]  However, Ms. Spowal did not accidentally or inadvertently contact the paddles in the mixer; she intentionally reached into the mixer to wipe her hand on the paddle. Therefore, the purpose of the bowl guard, which is to prevent accidental or inadvertent contact, would not have prevented Ms. Spowal from intentionally reaching into the bowl to wipe her hand on the paddle. Further, Mr. Kelly testified that, "[T]he mixer is reasonably safe without [the bowl guard], and it's reasonably safe with it." [ECF No. 57-7]  Therefore, even if we were to credit his testimony as it applies to the mixer model in question, which it does not, the bowl guard was not necessary to render the product "reasonably safe."

### D. Loss of Consortium

"Loss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse." <u>Reiff v. Convergent Technologies</u>, 957 F. Supp. 573, 584 (D.N.J. 1997) (citing <u>Hampton v. Hanrahan</u>, 600 F.2d 600, 620-21 (3d Cir. 1979). Because this Court will grant summary judgment to the Defendant on each of the Plaintiffs' claims, Plaintiff's husband, has no foundation from which to derive a loss of consortium claim. Accordingly, this Court will also grant summary judgment to the Defendant on Plaintiffs' loss of consortium count.

## IV.  Conclusion

As stated previously, the Defendant was under no duty to warn because the product was not defective due to inadequate warnings that rendered the product unreasonably safe.  The danger presented by the paddles continuing to run after the mixer was turned off was open and obvious to an ordinary consumer who uses the product with common knowledge of the product's characteristics.  Further, the product was not used for its intended use when Ms. Spowal intentionally reached into the mixer to wipe her hand on the paddle.  Therefore, the Defendant was under no duty to warn, either at the time of manufacture or after the time of sale.

Under a failure to warn theory of liability, "the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury." Conti v. Ford Motor Co., 743 F.2d 195, 198 (3d Cir. 1984) (finding that there was no evidence that the driver of a vehicle would have paid any greater attention to what he was doing if there was a warning inside the vehicle reminding the operator to disengage the clutch before starting the car in gear). "[L]iability may result only when there is sufficient evidence that additional warnings or reminders may have made a difference." Id. at 199.  Further, there is no duty to warn of a danger that is open and obvious, nor is a manufacturer liable for harm resulting from an unintended use of the product.

We find that the Plaintiffs have failed to present sufficient evidence that a warning on the mixer was necessary to render the product reasonably safe.  Nor have the Plaintiffs presented evidence that Ms. Spowal was using the product for its intended use.  Further, the danger that the paddles would require some wind-down time to come to a complete stop after turning the mixer

21

off was open and obvious.  We find that Ms. Spowal was not using the product for its intended use when she reached into the mixer to wipe her hand on the paddle.  We also find that the danger of the paddles would not come to a complete stop after turning the mixer off and would require some wind-down time is open and obvious, negating a duty to warn the Plaintiff of the danger. Therefore, no reasonable jury could find that the Defendant was under a duty to warn the Plaintiff of the danger that the paddles do not come to a complete stop immediately after turning off the mixer.


An appropriate Order follows.


May **3⎯2**, 2013                                        _Maurice B. Cohill_

                                                Maurice B. Cohill, Jr.
                                                Senior U.S. District Court Judge